QUINN EMANUEL URQUHART & SULLIVAN LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for BlackBerry Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BlackBerry Limited, a Canadian Corporation<br><br>Plaintiff,<br><br>vs.<br><br>Typo Products, LLC, Typo Innovations, LLC, Show Media LLC, Hallier Investments, LLC, all Nevada Limited Liability Companies<br><br>and<br><br>Laurence Hallier, an individual<br><br>Defendants. | CASE NO. 3:15-cv-715<br><br>**BLACKBERRY LIMITED'S COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, DILUTION, UNFAIR BUSINESS PRACTICES, AND UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BlackBerry Limited ("BlackBerry") complains against Typo Products, LLC, Typo Innovations, LLC, Show Media, LLC, Hallier Investments, LLC, and Laurence Hallier (collectively "Defendants") as follows:

**INTRODUCTION**

1. BlackBerry revolutionized the mobile communications industry. Its innovative, cutting-edge products changed the way millions of people around the world connect, converse, and share digital information.

2. BlackBerry was founded in 1984 in Waterloo, Ontario by two engineering students, Mike Lazaridis and Douglas Fregin. In its early years, the company — then named Research In Motion ("RIM") — focused its inventive energies on wireless data transmission.

3. From its modest beginnings more than 30 years ago, BlackBerry has gone on to offer a portfolio of award-winning products, services, and embedded technologies to tens of millions of individual consumers and organizations around the world, including governments, educational institutions, and over 90% of Fortune 500 companies. By transforming the way people communicate, BlackBerry laid a foundation for today's multibillion-dollar modern smartphone industry.

4. BlackBerry has since been recognized as a leader in design and technology in mobile handheld devices. In particular, BlackBerry has devoted substantial resources and research efforts to the development of a critical aspect of a mobile device's user interface — the keyboard. BlackBerry's physical keyboard designs have been recognized by the press and public as "iconic" and a significant market differentiator.

5. BlackBerry's innovations in keyboard designs and related technologies have given rise to broad intellectual property rights, including patent and trade dress rights.

6. Defendants deliberately set out to create a knockoff copy of BlackBerry's iconic keyboard designs and technologies in an attempt to trade on BlackBerry's commercial recognition and goodwill. Typo founders — Laurence Hallier and Ryan Seacrest — claim they created the Typo Keyboard specifically to replace their BlackBerry devices with a physical keyboard copied from a BlackBerry. As previously set forth on Typo's website:

> For several years, many of our friends and colleagues carried two phones: one for typing and correspondence and an iPhone for virtually everything else. One night, we went out to dinner and both had our phones on the table.
>
> Two people, four phones!

(http://typokeyboards.com/about-us (January 22, 2014)).

7. Defendants slavishly copied BlackBerry's iconic keyboard designs and technologies to generate their initial Typo keyboard case (hereinafter "Typo Keyboard"), which was an external case for the Apple iPhone 5/5s. While alternative designs for physical keyboard add-on products were available, Defendants realized none of those products could compete with their BlackBerry devices in terms of performance or design. Defendants therefore copied the iconic BlackBerry keyboard down to the smallest detail, including the layout of the keyboard itself, the shapes of the keys, and the surface sculpting of the keys, and incorporated those details into their Typo Keyboard. Industry analysts noted the rampant copying: "The keyboard itself looks like it's been lifted straight from a BlackBerry Q10 (They say imitation is the sincerest form of flattery)…." (http://gadgetshow.channel5.com/gadget-show/gadget-news/typo-keyboard-case-turns-your-iphone-into-a-blackberry-for-better-and-worse) (December 9, 2013).

8. Ryan Seacrest himself acknowledged BlackBerry's influence on the Typo keyboard. On or about December 9, 2013, Seacrest stated the following about the Typo keyboard in an interview by CNN (http://www.cnn.com/2013/12/06/tech/mobile/ryan-seacrest-iphone-startup/):

> Interviewer: So it's the best thing about a BlackBerry, within the iPhone.
>
> Ryan Seacrest: That's kind of how this came to fruition.

9. BlackBerry immediately took notice of Typo's blatant rip-off of its intellectual property and filed a lawsuit in early January 2014, before Typo showed the Typo Keyboard to the public at the Consumer Electronics Show in Las Vegas. On January 22, 2014, with shipments of the Typo Keyboard set to start any time, BlackBerry filed a motion for a preliminary injunction to protect BlackBerry's valuable intellectual property rights and its goodwill.

10. Judge William H. Orrick granted BlackBerry's motion for a preliminary injunction on March 28, 2014, finding that BlackBerry had shown a likelihood of prevailing on the merits of its claims and that BlackBerry would suffer irreparable harm from Typo's business model and actions. On April 15, 2014, BlackBerry posted the court-ordered bond and the preliminary injunction went into effect. Under the terms of the preliminary injunction, Typo was enjoined from, among other things, "making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing" the Typo Keyboard and any product that is "no more than colorably different" from that product.

11. Instead of complying with the Court's preliminary injunction, Typo devised a scheme to evade it in an effort to keep the Typo brand alive and to build up goodwill by continuing to trade upon BlackBerry's proprietary designs and technologies. Typo began by dumping thousands of Typo Keyboards at discounted prices before BlackBerry posted bond. Then, after BlackBerry posted bond, Typo began selling off its remaining inventory of enjoined Typo Keyboards, stored in Las Vegas, to foreign retailers. Even worse, Defendant Laurence Hallier passed on thousands of enjoined keyboards to a close friend in the United States and then directed potential customers to his friend. Typo's post-injunction sales injected tens of thousands of enjoined keyboards into consumers' hands, causing even more harm to BlackBerry while strengthening Typo's goodwill.

12. Upon learning these facts, BlackBerry filed a motion for contempt in August 2014 and, after the Court ordered additional discovery into the extent of Typo's contempt, a renewed motion for contempt in November 2014. On February 4, 2015, Judge Orrick granted BlackBerry's motion for contempt, awarding over $860,000 in sanctions, plus BlackBerry's attorneys' fees and costs. Judge Orrick found that this amount was "just and appropriate" because "Typo's not so clever attempts to evade the Court's preliminary injunction is quite certain, and it is my obligation and intent to vindicate respect for and compliance with the Court's orders."

13. At the same time that Typo was violating the Court's preliminary injunction order, Defendants were acting in concert to develop, manufacture, import, promote, and sell a modified version of their infringing product known as the Typo2 iPhone keyboard case (hereinafter "Typo2

Keyboard"). The Typo2 Keyboard is another external case for the Apple iPhone 5/5s and also for the new iPhone 6, and unmistakably derives from the Typo Keyboard.

14. Just as they did with the Typo Keyboard, Defendants have again copied numerous proprietary BlackBerry designs and patents in the Typo2 Keyboard. The Typo2 Keyboard still blatantly copies BlackBerry's iconic keyboard trade dress designs that have been embodied in numerous BlackBerry smartphones from the 2007 BlackBerry 8800 to the current Q10 and Classic models. The Typo2 Keyboard also infringes numerous BlackBerry utility patents related to BlackBerry's proprietary keyboard design, backlighting and typing automation technologies.

15. Defendants' extensive copying of BlackBerry's proprietary designs and technology is part of an ongoing attempt to trade on BlackBerry's commercial recognition and goodwill, its years of technological innovation, and its intellectual property. By this action, BlackBerry seeks to put an end to Defendants' pattern and practice of unlawful conduct and to obtain recompense for the harm that BlackBerry has suffered.

**THE PARTIES**

16. BlackBerry Limited is a Canadian company with its principal place of business at 2200 University Avenue East, Waterloo, Ontario, Canada N2K 0A7.

17. On information and belief, Typo Products, LLC is a Nevada limited liability company with a principal place of business at 1100 Glendon Avenue, Suite 925, Los Angeles, CA 90024. Typo Products operates and/or owns the website located at http://typokeyboards.myshopify.com/.

18. On information and belief, Typo Innovations, LLC is a Nevada limited liability company with a principal place of business at 1100 Glendon Avenue, Suite 925, Los Angeles, CA 90024. Typo Innovations operates and/or owns the website located at http://typokeyboards.myshopify.com/.

19. On information and belief, Show Media, LLC is a Nevada limited liability company with a principal place of business at 6623 Las Vegas Blvd South, Suite 370, Las Vegas, NV 89119. Show Media LLC also operates a place of business at 1100 Glendon Ave., Suite

#PH9, Los Angeles, CA 90024. Show Media operates and/or owns the website located at http://www.showmedia.com/.

20. On information and belief, Hallier Investments, LLC is a Nevada limited liability company with a principal place of business at 2510 East Sunset Road, Bldg 5, Suite 400, Las Vegas, NV 89120.

21. On information and belief, Laurence Hallier, is a resident of California with a primary residence at 1500 Loma Vista, Beverly Hills, CA 90210.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction under 15 U.S.C. §§ 1114, 1125, and 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367.

23. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, in that the facts underlying the state law claims are so related to the patent and trade dress claims that they form part of the same case or controversy under Article III of the United States Constitution.

24. Defendant Typo Products is subject to personal jurisdiction in this Court because, *inter alia*, and upon information and belief, Typo Products has its principal place of business and office in California and directly and through agents regularly solicits and transacts business in the Northern District of California and elsewhere in the state of California, including through its website at http://typokeyboards.myshopify.com/. In particular, Typo Products has committed and continues to commit acts of infringement and dilution in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District. Typo Products' acts cause injury to BlackBerry, including within this District.

25. Defendant Typo Innovations is subject to personal jurisdiction in this Court because, *inter alia*, and upon information and belief, Typo Innovations has its principal place of business and office in California and directly and through agents regularly solicits and transacts business in the Northern District of California and elsewhere in the state of California, including through its website at http://typokeyboards.myshopify.com/. In particular, Typo Innovations has

committed and continues to commit acts of infringement and dilution in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District. Typo Innovations' acts cause injury to BlackBerry, including within this District.

26. Defendant Show Media is subject to personal jurisdiction in this Court because, *inter alia*, and upon information and belief, Show Media has a place of business and office in California and directly and through agents regularly solicits and transacts business in the Northern District of California and elsewhere in the state of California, including through its website at http://www.showmedia.com/. In particular, Show Media has committed and continues to commit acts of infringement and dilution in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District. Show Media's acts cause injury to BlackBerry, including within this District.

27. Defendant Hallier Investments is subject to personal jurisdiction in this Court because, *inter alia*, and upon information and belief, Hallier Investments has a place of business and office in California and directly and through agents regularly solicits and transacts business in the Northern District of California and elsewhere in the state of California. In particular, Hallier Investments has committed and continues to commit acts of infringement and dilution in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District. Hallier Investments' acts cause injury to BlackBerry, including within this District.

28. Defendant Laurence Hallier is subject to personal jurisdiction in this Court because, *inter alia*, and upon information and belief, Laurence Hallier is a resident of California and has a place of business and office in California and directly and through agents regularly solicits and transacts business in the Northern District of California and elsewhere in the state of California. In particular, Laurence Hallier has committed and continues to commit acts of infringement and dilution in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered

for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District. Laurence Hallier's acts cause injury to BlackBerry, including within this District.

29. Venue is proper in this District under the provisions of 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

30. Because this action is an Intellectual Property Action within the meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

## FACTS COMMON TO ALL CLAIMS

### BlackBerry's Innovations and Industry Recognition

31. BlackBerry is a global leader in the mobile communications industry. Through its significant investment in research and development over the past 30 years, BlackBerry has developed innovative, cutting-edge technologies that have changed the face of telecommunications.

32. In the late 1990s, BlackBerry began to release a series of game-changing handheld mobile devices with physical keyboards that enabled users to send and receive email and messages on the go without needing to be tethered to a modem or a desktop computer. The innovative nature of the 1998 RIM 950 Wireless Handheld, for example, was instantly recognized, garnering both an Editor's Choice Award from CNET and Andrew Seybold's Outlook Award.

33. In 2002, BlackBerry released the BlackBerry 6710 and 6720 — the first BlackBerry devices capable of both sending emails and making phone calls. The next year, BlackBerry introduced smartphone models that added built-in audio hardware and color screens.

34. Since those first smartphones, BlackBerry has continued to introduce handheld wireless products incorporating its distinctive keyboard designs. Beginning with the release of the BlackBerry 8800 in 2007, and continuing until the current Q10 and Classic, each flagship BlackBerry phone has incorporated a distinctive physical keyboard design that is oriented portrait style below a screen.

35. There are a number of consistent keyboard features that give BlackBerry's mobile devices a recognizable visual appearance that identifies them as BlackBerry products. For example, each BlackBerry keyboard has four closely spaced rows of keys without significant space between them vertically. The keys in the top three rows have a roughly rectangular shape arranged like the keys on a piano without any significant space or material between them horizontally. Further, the bottom row of keys are roughly rectangular in shape with one larger elongated key in the center, and the outer keys in the bottom row reflect the curvature of the device. The surfaces of the keys, except for the larger elongated key in the center of the bottom row, tilt toward the edges of the keyboard. The surface of each key also has sans-serif capital letters, numbers or graphical icons on them in a contrasting color. These features create the distinctive look of the BlackBerry keyboard design in order to reinforce the impression that a BlackBerry smartphone is a high-end mobile device and to create an emotional appeal that makes the design more approachable than a sea of multiple buttons and keys.

36. Each of these devices also incorporates BlackBerry's novel and ground-breaking technology for sculpting the surface of the keys to aid the user in typing accurately and efficiently.

37. These key elements of the BlackBerry keyboard have been used in every BlackBerry flagship device since 2007, including the BlackBerry 8800, Bold 9000, Bold 9780, and Bold Touch 9900, which are shown below:









38. More recently, BlackBerry announced the Q10 in January 2013 and the Classic in February 2014. The Q10 and Classic incorporate both a modern touch-screen and the iconic BlackBerry physical keyboard, which has been straightened horizontally rather than being curved like prior iterations. The Q10 and Classic still incorporate all of the same distinctive design elements of the BlackBerry keyboard design found in BlackBerry phones from 2007 forward, discussed above. The Q10 and Classic are shown below:




39. BlackBerry has also invented text entry technology that enables users to enter text on hand-held devices in an efficient and expedient manner. As one example, BlackBerry invented technology that automatically inserts a period and automatically capitalizes the first word in a sentence after a certain number of spaces have been entered. This is a widely recognized and valuable feature to users of BlackBerry's devices.

40. BlackBerry has also developed keyboard backlighting technology that enables users to effectively enter text on hand-held devices even when the ambient light level is low.

41. Each successive iteration of BlackBerry's wireless devices has received industry praise and awards, particularly for its keyboard layout and design. As CNET noted, "the keyboard is arguably the star of any BlackBerry product."

42. As a result of its innovative and distinctive keyboard designs, BlackBerry's devices have achieved overwhelming commercial success, and BlackBerry's physical keyboard has become uniquely associated with the BlackBerry name.

43. BlackBerry's smartphones with physical keyboards have been advertised extensively throughout the United States through virtually every type of media, including television, magazines and other publications, newspapers, and the Internet. The vast majority of these advertisements focus on the distinctive BlackBerry keyboard design.

44. BlackBerry's smartphones with physical keyboards also have received significant unsolicited coverage in the media, and reviewers and analysts have praised the BlackBerry keyboard as the standard by which all other such products are judged. GSMA — the largest and most well known association of mobile operators — recognized BlackBerry's keyboard devices as "chang[ing] the face of corporate communication." Business Insider recognized BlackBerry as "the best at making keyboard phones," calling the Q10 in particular the "best keyboard phone you can buy." Similarly, in praising the BlackBerry Q10's keyboard, the well known New York Times technology columnist David Pogue remarked that "no phone on the market offers a better combination of speed and accuracy for entering text." In 2013, Thomson Reuters named BlackBerry one of the World's Top 100 Most Innovative Organizations, based largely on the number of "important patents [BlackBerry has], mainly for its popular keyboard."

45. BlackBerry's handheld devices — and their keyboards — have garnered widespread industry acclaim for both their unique design and their performance. BlackBerry and its keyboard products have garnered dozens of industry awards, including the GSMA Chairman's Award, InfoWorld Magazine's Product of the Year Award, PC World's World Class Award, the Network Industry Award for Best New Mobile Communications Product, the BusinessWeek Best Product of the Year award, PC Magazine's Best of the Year Award, and the Red Dot Award.

**BlackBerry's Utility Patents**

46. On April 24, 2012, the USPTO issued U.S. Patent No. 8,162,552 titled "Ramped-Key Keyboard for a Handheld Mobile Communication Device (hereinafter the "'552 patent"). This patent names Roman Rak, Jason Griffin, and Norman Ladouceur, all of Canada, as inventors, and identifies Research In Motion as the assignee. A true and correct copy of the '552 patent is attached hereto as **Exhibit A**.

47. On July 23, 2013, the USPTO issued U.S. Patent No. 8,493,322 titled "Hand-Held Electronic Device" (hereinafter the "'322 patent"). This patent names Jason T. Griffin, John A. Holmes, Mihal Lazaridis, Herb A. Little, Harry R. Major, Craig Dunk, Michael Brown, and Jerome Lang, all of Canada, as inventors, and identifies Research In Motion as the assignee. A true and correct copy of the '322 patent is attached hereto as **Exhibit B**.

48. On April 30, 2013, the USPTO issued U.S. Patent No. 8,431,849 titled "Backlighting Apparatus For A Keypad Assembly" (hereinafter the "'849 patent"). This patent names Chao Chen of Canada as the inventor, and identifies Research In Motion as the assignee. A true and correct copy of the '849 patent is attached hereto as **Exhibit C**.

49. On February 25, 2014, the USPTO issued U.S. Patent No. 8,658,925 titled "Backlighting Apparatus For A Keypad Assembly" (hereinafter the "'925 patent"). This patent names Chao Chen of Canada as the inventor, and identifies Research In Motion as the assignee. A true and correct copy of the '925 patent is attached hereto as **Exhibit D**.

50. On August 26, 2008, the USPTO issued U.S. Patent No. 7,417,565 titled "Keyboard For Hand-Held Devices" (hereinafter the "'565 patent"). This patent names Jason T. Griffin of Canada as the inventor, and identifies Research In Motion as the assignee. A true and correct copy of the '565 patent is attached hereto as **Exhibit E**.

51. BlackBerry is the owner of all right, title, and interest in and to the '552, '322, '849, '925, and '565 patents with the full and exclusive right to bring suit to enforce each patent, including the right to recover for past infringement.

**BlackBerry Keyboard Trade Dress**

52. Through the extensive and consistent advertising, promotion, and publicity of the BlackBerry mobile devices with physical keyboards, BlackBerry has obtained and holds trade dress protection in the design and appearance of those keyboards and devices that incorporate them.

53. The following non-functional elements of the design of BlackBerry's devices with a keyboard designed to be oriented portrait-style below a screen comprise some of the product configuration trade dress at issue in this case (the "BlackBerry Keyboard Trade Dress"):

- three rows of roughly rectangular shaped keys having little space between each key;
- at least two of the three rows of keys extend horizontally to the side edges of the device;
- an additional bottom row of roughly rectangular shaped keys;
- one larger elongated key in the center of the bottom row;
- outer keys in the bottom row that reflect the curvature of the device;
- little space vertically between the rows of keys;
- the surfaces of the keys tilt toward the left or right edges of the keyboard except for the larger elongated key in the center of the bottom row; and
- sans-serif capital letters, numbers or graphical icons in a contrasting color on the surface of the keys.

54. These elements of the BlackBerry Keyboard Trade Dress are distinctive and serve to identify BlackBerry as the source of BlackBerry's products. BlackBerry has made substantial sales in the United States of devices with the BlackBerry Keyboard Trade Dress. BlackBerry, and its carrier partners, have spent substantial money and resources, to advertise, market, and promote devices with the BlackBerry Keyboard Trade Dress through virtually every type of digital, broadcast, online, and print media in the United States. Devices with the BlackBerry Keyboard Trade Dress also have received significant unsolicited coverage in digital, broadcast, online, and print media around the United States. As a result of longstanding and widespread commercial use and success, as well as advertising, publicity, and promotion, the public has come to recognize the shape and design of the BlackBerry Keyboard Trade Dress, which is nonfunctional and distinctive, and to associate it with a single source, namely, BlackBerry.

**Defendants' Infringing Products**

55. Typo acted in concert with the other Defendants to develop, manufacture, import, promote, and sell the initial Typo Keyboard product, which Typo launched in early 2014. Instead of developing their own keyboard design, Defendants began a pattern and practice of copying BlackBerry's innovative and proprietary keyboard designs. Defendants deliberately copied

BlackBerry's iconic keyboard designs, and made the Typo Keyboard look exactly like the current BlackBerry Q10. Images of the Typo Keyboard on an Apple iPhone 5 next to BlackBerry's Q10 demonstrate just how precisely Defendants tried to copy the Q10's keyboard.

**Typo Keyboard and BlackBerry Q10**

56. BlackBerry immediately brought suit against Typo, and later Show Media, for patent and trade dress infringement, as well as other related claims, in order to protect BlackBerry's valuable intellectual property rights. BlackBerry quickly obtained a preliminary injunction based upon the Court's finding that BlackBerry was likely to succeed on its claims for patent infringement. The injunction prohibited Typo and anyone acting in concert with Typo from making, using, selling, offering to sell, importing, or exporting the Typo Keyboard. Typo continued to market and sell the Typo Keyboard outside the United States to build up goodwill for their brand by trading upon BlackBerry's own goodwill earned from its proprietary designs.

57. Rather than creating a new and non-infringing version of their keyboard case, Defendants produced a minimally modified derivative version of their infringing product that they

refer to as the Typo2. The Typo2 Keyboard has two models, one for the Apple iPhone 5/5s and one for the new iPhone 6. The Typo2 Keyboard is shown below on its own and with an Apple iPhone 5S inserted into the case.




**Typo2 Keyboard and Typo2 Keyboard with iPhone 5S Inserted**

58. The press and public recognized the scrupulous copying that resulted in the Typo Keyboard. Notwithstanding the changes made to the Typo2 Keyboard, numerous industry analysts and consumers once again have detected Defendants' intent to misuse BlackBerry's iconic trade dress, stating:

- "One would think that the new Typo would be built to avoid another court case, but this thing still pretty much makes your iPhone look like a BlackBerry." (Laptop Mag review);
- "The keyboard's look and layout will be familiar to Blackberry fans, as the Typo2 is almost identical to that of the BlackBerry Classic." (PC Mag review);
- "The top section of the case itself is made of rubberized black plastic and looks fairly nondescript, save for the BlackBerry-style keyboard at the bottom." (PC Mag review);

- "It's the successor to the ill-fated Typo keyboard, a nigh-identical device that bore more than a passing resemblance to BlackBerry hardware, which led to litigation." (c|net review);

- "Like its predecessor, the Typo2 equips an iPhone with a BlackBerry-style physical keyboard…." (electronista.com review);

- "Typo iPhone Keyboard Gets a Redesign, But BlackBerry Influence Remains" (mashable.com article);

- "Your iPhone isn't a BlackBerry, but it can fake it with the Typo 2. The latest version, which costs $99 just like the previous one, still looks similar to a BlackBerry keyboard, but there are slight differences and many improvements." (mashable.com review);

- "Also, the keyboard still literally looks identical to a blackberry keyboard…." (macrumors review comments);

- "If you're an iPhone 6 user who misses the BlackBerry's QWERTY keyboard then the Typo 2 case is for you. . . . There are other Bluetooth keyboard cases for iPhone but they mostly slide out and therefore don't make the iPhone look like a BlackBerry." (iDigitalTimes review);

- "The new Typo 2 keyboard case. It now looks kind of like a BlackBerry instead of exactly like a BlackBerry. The Typo 2 keyboard is still admittedly pretty reminiscent of a BlackBerry keyboard, but the shape of the keys has been changed, the layout has been shuffled a little more, and the telltale frets have been removed. One can sense Typo's lawyers behind most of these changes." (ars technica review)

- "Here's #Typo2, the Ryan Seacrest-backed, BlackBerry ripoff case you didn't know you wanted." (Laptop Mag tweet)

59. Typo and the other Defendants had many design options for the keyboard in the initial Typo Keyboard product, and in the derivative Typo2 Keyboard product, that would not embody the same combination of elements as the BlackBerry Keyboard Trade Dress. Instead of re-designing their product to steer clear of BlackBerry's trade dress designs, Defendants chose once again to infringe BlackBerry's trade dress. They did so willfully in an ongoing attempt to trade upon the goodwill that BlackBerry has developed in connection with BlackBerry's family of mobile products with physical keyboards. Defendants' extensive copying of BlackBerry's trade dress and patented technology continues as part of an ongoing attempt to trade on BlackBerry's commercial recognition and goodwill and years of technological innovation.

**Infringement of BlackBerry's Utility Patents**

60. The Typo2 Keyboard product infringes BlackBerry's '552, '322, '849, '925, and '565 patents and thereby unlawfully provides Defendants with unique functionality for their products that was the result of BlackBerry's investment and innovation.

61. Defendants have advertised the infringing Typo2 Keyboard product and have made it available for sale on Typo's website at the following page: http://typokeyboards.myshopify.com/. In addition to the Typo website, the Typo2 Keyboard may be purchased through online retailers Amazon, iStore, Rakuten, and elsewhere.

62. The Typo website further states that "[b]oth the hardware and software for the Typo2 Keyboard™ were designed and engineered in California & Utah."

63. Defendants have neither sought nor obtained authorization from BlackBerry to incorporate BlackBerry's patented technology into the Typo2 Keyboard product (or any other product), or to make, use, sell, or offer to sell the infringing Typo2 Keyboard in the United States (including without limitation as identified above).

64. Defendants similarly do not have authorization from BlackBerry to import the infringing Typo2 Keyboard into the United States. The Typo website states that the Typo2 Keyboard product is "manufactured and assembled" in China. Thus, before any domestic orders can be fulfilled, the Typo2 Keyboard must first be imported into the United States.

**Infringement of BlackBerry's Trade Dress**

65. Defendants' Typo2 Keyboard product embodies a combination of several elements of the BlackBerry Keyboard Trade Dress identified above, namely a physical keyboard designed to be oriented portrait style below a screen where the keyboard contains:

- three rows of roughly rectangular shaped keys having little space between each key;
- at least two of the three rows of keys extend horizontally to the side edges of the device;
- an additional bottom row of roughly rectangular shaped keys;
- one larger elongated key in the center of the bottom row;

- outer keys in the bottom row that reflect the curvature of the device;
- little space vertically between the rows of keys;
- the surfaces of the keys tilt toward the left or right edges of the keyboard except for the larger elongated key in the center of the bottom row; and
- sans-serif capital letters, numbers or graphical icons in a contrasting color on the surface of the keys.

66. Defendants' Typo2 Keyboard has caused and is likely to continue to cause confusion, mistake, and deception as to the source or origin of Defendants' products and is likely to falsely suggest a sponsorship, connection, or association between Defendants, their products, and/or their commercial activities with BlackBerry. For example, the public is likely to mistakenly believe that BlackBerry makes the Typo2 Keyboard product, that BlackBerry has authorized Defendants to use its trade dress, or that there is some kind of relationship between BlackBerry and Typo. In addition, the Typo2 Keyboard product is likely to dilute the distinctiveness and value of BlackBerry's famous BlackBerry Keyboard Trade Dress.

67. One of BlackBerry's most significant distinctions in the marketplace is the design of its keyboard, which stands out from all of the other mobile devices on the market. BlackBerry's goodwill among consumers is uniquely tied to its keyboard design. Defendants' copying of BlackBerry's intellectual property rights not only allows Defendants to trade on and benefit from BlackBerry's investment, it threatens to substantially diminish the goodwill that BlackBerry has developed with consumers.

68. Defendants' Typo2 Keyboard has been marketed as a way to obtain the advantages of BlackBerry's keyboard design for use with an iPhone while supplanting BlackBerry within its customer base.

69. Defendants' infringement of BlackBerry's utility patents and its infringement and dilution of the BlackBerry Keyboard Trade Dress have damaged and irreparably injured BlackBerry, and unless Defendants are preliminarily and permanently enjoined, Defendants will further damage and irreparably injure BlackBerry and the goodwill it has built.

70. Defendants' infringement and dilution of the BlackBerry Keyboard Trade Dress have irreparably injured the public, and unless preliminarily and permanently enjoined, will further irreparably injure the public, which has an interest in being free from deception, confusion and/or mistake in the marketplace.

**FIRST CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 8,162,552)**

71. BlackBerry incorporates and realleges paragraphs 1 through 70 of this Complaint.

72. Defendants have infringed and continue to infringe one or more claims of the '552 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Typo2 Keyboard product in violation of 35 U.S.C. § 271.

73. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**SECOND CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 8,493,322)**

74. BlackBerry incorporates and realleges paragraphs 1 through 73 of this Complaint.

75. Defendants have infringed and continue to infringe one or more claims of the '322 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Typo2 Keyboard product in violation of 35 U.S.C. § 271.

76. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**THIRD CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 8,431,849)**

77. BlackBerry incorporates and realleges paragraphs 1 through 76 of this Complaint.

78. Defendants have infringed and continue to infringe one or more claims of the '849 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Typo2 Keyboard product in violation of 35 U.S.C. § 271.

79. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**FOURTH CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 8,658,925)**

80. BlackBerry incorporates and realleges paragraphs 1 through 79 of this Complaint.

81. Defendants have infringed and continue to infringe one or more claims of the '925 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Typo2 Keyboard product in violation of 35 U.S.C. § 271.

82. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**FIFTH CLAIM FOR RELIEF**

**(Infringement of United States Patent No. 7,417,565)**

83. BlackBerry incorporates and realleges paragraphs 1 through 82 of this Complaint.

84. Defendants have infringed and continue to infringe one or more claims of the '565 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Typo2 Keyboard product in violation of 35 U.S.C. § 271.

85. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**SIXTH CLAIM FOR RELIEF**

**(Trade Dress Infringement)**

86. BlackBerry incorporates and realleges paragraphs 1 through 85 of this Complaint.

87. BlackBerry is the owner of all right and title to the distinctive BlackBerry Keyboard Trade Dress. The BlackBerry Keyboard Trade Dress, as embodied in numerous BlackBerry products, including the 8800, Bold 9000, Tour, Bold Touch, Q10 and Classic, has acquired secondary meaning, and is not functional.

88. In addition, based on extensive and consistent advertising, promotion, and sales throughout the United States, the BlackBerry Keyboard Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying BlackBerry as the source of these products.

89. BlackBerry's extensive advertising, promotion, and sales of products with the distinctive BlackBerry Keyboard Trade Dress have resulted in BlackBerry's acquisition of valuable, legally protected rights in the BlackBerry Keyboard Trade Dress, as well as considerable consumer goodwill.

90. The Typo2 Keyboard product has misappropriated the BlackBerry Keyboard Trade Dress by copying a combination of several elements of that trade dress.

91. Defendants' manufacturing, promotion, and distribution of the Typo2 Keyboard product with a product design that copies a combination of several elements of the BlackBerry Keyboard Trade Dress is likely to cause confusion mistake, or to deceive the consumer as to the affiliation, connection or association of Defendants with BlackBerry, or to the origin, sponsorship, or approval by BlackBerry of Defendants' goods and services.

92. Defendants' manufacture, promotion, and distribution of the Typo2 Keyboard product with a product design that copies a combination of several elements of the BlackBerry Keyboard Trade Dress enables Defendants to benefit unfairly from BlackBerry's reputation and success.

93. Defendants' actions violate 15 U.S.C. §1125(a).

94. Defendants knew of the BlackBerry Keyboard Trade Dress when they designed the initial Typo Keyboard product and the derivative Typo2 Keyboard product. Accordingly, Defendants' infringement has been and continues to be intentional, willful and without regard to BlackBerry Keyboard Trade Dress.

95. BlackBerry has been and will continue to be irreparably harmed and damaged by Defendants' infringing conduct, and BlackBerry lacks an adequate remedy at law to compensate for this harm and damage.

96. BlackBerry is informed and believes, and on that basis alleges, that Defendants have further obtained investment by virtue of their infringement of the BlackBerry Keyboard Trade Dress.

97. BlackBerry also has sustained damages as a direct and proximate result of Defendants' infringement of the BlackBerry Keyboard Trade Dress in an amount to be proven at trial, including Defendants' profits and/or gains of any kind resulting from its acts of infringement.

98. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**SEVENTH CLAIM FOR RELIEF**

**(Trade Dress Dilution)**

99. BlackBerry incorporates and realleges paragraphs 1 through 98 of this Complaint.

100. As alleged above, the BlackBerry Keyboard Trade Dress has acquired distinctiveness in the minds of consumers and has become famous.

101. Defendants have misappropriated the BlackBerry Keyboard Trade Dress to promote their own infringing products in interstate commerce.

102. Defendants have promoted the distinctive and famous BlackBerry Keyboard Trade Dress in a manner that dilutes and is likely to dilute the distinctiveness of the BlackBerry Keyboard Trade Dress by (a) diminishing the public's association of the exclusivity of the BlackBerry Keyboard Trade Dress with BlackBerry as a company, and (b) diminishing the status of the BlackBerry Keyboard Trade Dress as a unique identifier of the BlackBerry brand.

103. Defendants' actions constitute dilution in violation of 15 U.S.C. §1125(c).

104. Defendants knew of the BlackBerry Keyboard Trade Dress when they designed the initial Typo Keyboard product and the derivative Typo2 Keyboard product. Accordingly, Defendants' acts of dilution have been and continue to be intentional, willful and without regard to the BlackBerry Keyboard Trade Dress.

105. BlackBerry has been and will continue to be irreparably harmed and damaged by Defendants' conduct, and BlackBerry lacks an adequate remedy at law to compensate for this harm and damage.

106. BlackBerry is informed and believes, and on that basis alleges, that Defendants have obtained investment by virtue of their dilution of the BlackBerry Keyboard Trade Dress.

107. BlackBerry also has sustained damages as a direct and proximate result of Defendants' infringement of the BlackBerry Keyboard Trade Dress in an amount to be proven at trial, including Defendants' profits and/or gains of any kind resulting from their acts of dilution.

108. Because Defendants' actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**EIGHTH CLAIM FOR RELIEF**

**(Unfair Business Practices - California Business and Professions Code § 17200, *et seq.*)**

109. BlackBerry incorporates and realleges paragraphs 1 through 108 of this Complaint.

110. The acts of Defendants described above constitute unlawful, unfair, and fraudulent business practices as defined by California Business & Professions Code § 17200, *et seq.*

111. BlackBerry has valid and protectable rights in the BlackBerry Keyboard Trade Dress. The BlackBerry Keyboard Trade Dress does not serve any function other than to identify BlackBerry as the source of its wireless handheld products. The BlackBerry Keyboard Trade Dress is distinctive, and, through BlackBerry's long use, has come to be associated solely with BlackBerry as the source of the products on which it is used.

112. Defendants' use of its infringing trade dress is likely to cause confusion as to the source of the Typo2 Keyboard product, and is likely to cause others to be confused or mistaken into believing that BlackBerry has authorized Defendants to use BlackBerry's keyboard design, there is a relationship between Defendants and BlackBerry, or that the Typo2 Keyboard product is affiliated with or sponsored by BlackBerry. In addition, the Typo2 Keyboard product is likely to dilute the distinctiveness and value of BlackBerry's famous BlackBerry Keyboard Trade Dress.

113. The above-described acts and practices by Defendants are likely to mislead or deceive the general public and therefore constitute fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq.*

114. The above-described acts constitute false designation of origin under 15 U.S.C. § 1125(a), and dilution under 15 U.S.C. § 1125(c), and are therefore unlawful acts in violation of California Business & Professions Code §§ 17200, *et seq.*

115. Defendants acted willfully and intentionally in designing the infringing trade dress, with full knowledge of BlackBerry's prior rights in the distinctive BlackBerry Keyboard Trade Dress, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between Defendants and BlackBerry or between the Typo2 Keyboard product and BlackBerry's products.

116. The unlawful, unfair, and fraudulent business practices of Defendants described above present a continuing threat to the public in that Defendants continue to promote the Typo2 Keyboard product by wrongfully trading on the goodwill of the BlackBerry Keyboard Trade Dress.

117. As a direct and proximate result of these acts, Defendants have received, and will continue to profit from, the strength of the BlackBerry Keyboard Trade Dress.

118. As a direct and proximate result of Defendants' wrongful conduct, BlackBerry has been injured in fact, and such harm will continue unless Defendants' acts are enjoined by the Court. BlackBerry has no adequate remedy at law for Defendants' continuing violation of BlackBerry's rights.

119. Defendants should be required to restore to BlackBerry any and all profits earned as a result of their unlawful, unfair, and fraudulent business practices, or provide BlackBerry with any other restitutionary relief as the Court deems appropriate.

**NINTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

120. BlackBerry incorporates and realleges paragraphs 1 through 119 of this Complaint.

121. As a result of the conduct alleged herein, Defendants have been unjustly enriched to BlackBerry's detriment. BlackBerry seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Defendants' inequitable activities.

**PRAYER FOR RELIEF**

WHEREFORE, BlackBerry prays for the following relief:

1. A judgment that Defendants have infringed one of more claims of each of the '552, '322, '849, '925, and '565 patents;

2. An order and judgment preliminarily and permanently enjoining Defendants, and their officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, from further acts of infringement of the '552, '322, '849, '925, and '565 patents;

3. A judgment awarding BlackBerry all damages adequate to compensate BlackBerry for Defendants' infringement of the '552, '322, '849, '925, and '565 patents, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

4. A judgment finding Defendants' infringement of the '552, '322, '849, '925, and '565 patents to be willful and awarding treble damages under 35 U.S.C. § 284;

5. A judgment awarding BlackBerry its reasonable attorneys' fees as provided for in 35 U.S.C. § 285 to the extent the Court finds this case exceptional;

6. An order preliminarily and permanently enjoining Defendants and their officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, from: directly or indirectly infringing the BlackBerry Keyboard Trade Dress, or using any other product design similar to or likely to cause confusion with the BlackBerry Keyboard Trade Dress; using any false designation of origin or false description, including the appearance of its Typo2 Keyboard product, that can, or is likely to, lead the consuming public, or individual members thereof, to believe that any goods produced, advertised, promoted, marketed, provided, or sold by Defendants are in any manner associated or connected with BlackBerry, or are advertised, promoted, marketed, sold, licensed, sponsored, approved or authorized by BlackBerry; committing any other unfair business practices directed toward

obtaining for themselves the business and customers of BlackBerry; and committing any other unfair business practices directed toward devaluing or diminishing BlackBerry's brand or business;

7. Actual damages suffered by BlackBerry as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

8. Reasonable funds for future corrective advertising;

9. An accounting of Defendants' profits as provided for in 15 U.S.C. § 1117;

10. A judgment trebling any damages award as provided for in 15 U.S.C. § 1117;

11. A judgment awarding BlackBerry its reasonable attorneys' fees as provided for in 15 U.S.C. § 1117 and any applicable state law;

12. An order pursuant to 15 U.S.C. § 1118 requiring that all materials bearing the infringing BlackBerry Keyboard Trade Dress to be delivered up and destroyed, and requiring Defendants to withdraw from the market all infringing products and advertising and promotional material displaying the infringing products;

13. An order directing Defendants to file with the Court and serve upon BlackBerry's counsel within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which Defendants have complied with the injunction, including the provision relating to destruction and recall of infringing products and materials;

14. Punitive damages pursuant to California Civil Code § 3294;

15. Restitutionary relief against Defendants and in favor of BlackBerry, including disgorgement of wrongfully obtained profits and any other appropriate relief;

16. Costs of suit and reasonable attorneys' fees; and

17. Such other and further relief to which BlackBerry may show itself to be entitled, including all remedies provided for in 15 U.S.C. § 1117, Cal. Bus. & Prof. Code § 17200, et seq., and under any other applicable law.

DATED: February 16, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Kevin P. B. Johnson
Kevin P. B. Johnson
Attorney for BlackBerry Limited

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), BlackBerry Limited hereby demands trial by jury of all triable issues.

DATED: February 16, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Kevin P. B. Johnson
Kevin P. B. Johnson
Attorney for BlackBerry Limited